[Cite as *State v. Cameron*, 2011-Ohio-4484.]

# IN THE COURT OF APPEALS
# FIRST APPELLATE DISTRICT OF OHIO
# HAMILTON COUNTY, OHIO

| | | |
|---|---|---|
| STATE OF OHIO, | : | APPEAL NO. C-100708 |
| | | TRIAL NO. B-1002534 |
| Plaintiff-Appellee, | : | |
| | | *D E C I S I O N.* |
| vs. | : | |
| LENNY CAMERON, | : | |
| Defendant-Appellant. | : | |

Criminal Appeal From: Hamilton County Court of Common Pleas

Judgment Appealed From Is: Affirmed and Cause Remanded

Date of Judgment Entry on Appeal: September 7, 2011

*Joseph T. Deters*, Hamilton County Prosecuting Attorney, and *Paula Adams*, Assistant Prosecuting Attorney, for Plaintiff-Appellee,

*Bruce Hust*, for Defendant-Appellant.

Please note:  This case has been removed from the accelerated calendar.

**J. HOWARD SUNDERMANN, Presiding Judge.**

{¶1} Following a bench trial, defendant-appellant Lenny Cameron was found guilty of aggravated robbery and the accompanying firearm specifications, robbery, and having weapons while under a disability. At sentencing, the trial court merged the robbery and aggravated robbery counts. It sentenced Cameron to terms of three years for the aggravated robbery, one year for the weapons offense, and three years for the merged firearm specifications. It ordered the terms be served consecutively, for a total sentence of six years in prison.

{¶2} In two assignments of error, Cameron claims (1) that his convictions are not supported by the weight of the evidence and (2) that the trial court failed to properly notify him of his post-release control obligations. Finding merit only in his second assignment of error, we remand this case to the trial court for the sole purpose of informing Cameron of his post-release control obligations in accordance with R.C. 2929.191. We, otherwise, affirm the trial court's judgment and sentences.

### I.  A Robbery Gone Wrong

{¶3} On March 24, 2010, at approximately 2:15 p.m. in the afternoon, David Turner was in the area of Warsaw and Ross in Price Hill with his girlfriend Sandra Davis and his friend Edwin Cousins. Turner was driving a 1996 green Chevrolet Tahoe. When he stopped to say hello to a former acquaintance, two black men approached his vehicle. One of the men jumped into the back seat, while the other man stood by the back passenger door. Turner heard the man who had jumped into the back seat say something like "give that shit up." When Turner turned around, he saw a gun pointed in his face. The gun went off, hitting Turner in the face. Turner then grabbed his own gun from the floor of the vehicle and fired two shots. The two men then ran off. Because the bullet had only grazed Turner's face, he was able to drive away from the scene. At trial,

Turner testified that he did not know the identity of either man who had approached his car.

{¶4}     Cincinnati Police Sergeant Doug Snider responded to the scene and discovered Cameron lying in front of a building at 1005 Ross, and another man down the street from him. Both men were suffering from gunshot wounds. A gun was found in the bushes approximately ten feet away from where Cameron was lying. The gun was a Spanish manufactured .45-caliber Gabilondo. There was no magazine and there were no bullets inside the gun. Two magazines with ammunition that matched the gun were found inside the doorway at 1005 Ross. The gun was later test fired and found to be operable both with and without a magazine inside it.

{¶5}     In the meantime, Cameron, who had sustained life-threatening injuries, was immediately transported to the hospital. Sergeant Snider questioned Cameron at the hospital. Cameron admitted that he had been present at the scene. He told Sergeant Snider that someone had driven up in a green Chevrolet Impala, got out, and shot him. After Cameron was released from the hospital, Sergeant Snider again interviewed Cameron. Cameron waived his *Miranda* rights. He initially gave Sergeant Snider the same story, but he then changed the story and ultimately admitted his involvement in the robbery. Sergeant Snider taped Cameron's statement; and it was played during the trial.

{¶6}     At trial, Cameron testified that the incident was a "drug deal gone bad" and that he had actually obtained the .45-caliber Gabilondo from the bushes in an attempt to defend himself after he had been shot. He further explained that in his statement to Sergeant Snider he was only telling the police what they wanted to hear.

### II. Weight of the Evidence

{¶7}     In his first assignment of error, Cameron claims that the weight of the evidence does not support his convictions.

{¶8}     When addressing a manifest-weight-of-the-evidence challenge, this court must review the entire record, weigh the evidence and all reasonable inferences, consider the credibility of the witnesses, and determine whether, in resolving conflicts in the evidence, the trier of fact clearly lost its way and created such a manifest miscarriage of justice that the conviction must be reversed and a new trial ordered.[1]  Because the trier of fact is in a better position to observe the witnesses' demeanor and to assess their credibility, the weight of the evidence and the credibility of the witnesses are primarily for the trier of fact.[2]  Moreover, the trier of fact is free to believe all, part, or none of a witness's testimony.[3]

{¶9}     In finding Cameron guilty of the offenses, the trial court stated that Cameron's trial testimony was simply not credible.  The trial court stated it was choosing to accord more weight to Cameron's taped statement because it was consistent with both Turner's testimony and the physical evidence the police had recovered from the scene. Based upon our review of the record, we cannot conclude that the trial court lost its way in finding Cameron guilty of the aggravated robbery, the robbery, and the weapons offenses.  As a result, we overrule his first assignment of error.

### III. Post-Release Control

{¶10}     In his second assignment of error, Cameron argues that his sentence is contrary to law because the trial court failed to orally inform him of his post-release control obligations at the sentencing hearing. The state agrees.

---

[1] *State v. Thompkins*, 78 Ohio St.3d 380, 387, 1997-Ohio-52, 678 N.E.2d 541.
[2] *State v. DeHass* (1967), 10 Ohio St.2d 230, 227 N.E.2d 212, paragraph one of the syllabus.
[3] *State v. Antill* (1964), 176 Ohio St. 61, 67, 197 N.E.2d 548; see also, *State v. Thompkins*, supra, at 387, citing Black's Law Dictionary (6 Ed. 1990) 1594 (stating that "[w]eight is not a question of mathematics, but depends on its effect in inducing belief").

{¶11}    R.C. 2967.28(B) provides that "[e]ach sentence to a prison term for a felony of the first degree * * * or for a felony of the third degree that is not a felony sex offense and in the commission of which the offender caused or threatened to cause physical harm to a person shall include a requirement that the offender be subject to a period of post-release control imposed by the parole board after the offender's release from imprisonment."

{¶12}    R.C. 2929.19(B)(3)(c) requires "that the sentencing court notify the offender at the sentencing hearing that he will be supervised pursuant to R.C. 2967.28 and that the parole board may impose a prison term of up to one-half of the prison term originally imposed on the offender if he violates supervision or a condition of his post release control."[4]   When a sentencing court fails to advise an offender about post-release control at the sentencing hearing and the offender is sentenced after July 11, 2006, the effective date of R.C. 2929.191, the trial court violates its statutory duty and that part of an offender's sentence that is related to post-release control is void.[5]   To remedy the post-release control defect, the trial court must employ the procedures set forth in R.C. 2929.191.[6]

{¶13}    Our review of the record reveals that the trial court failed to advise Cameron at his sentencing hearing that he was subject to post-release control for a mandatory period of five years for the aggravated robbery[7] and a mandatory period of three years for the weapons under disability offense.[8]  The trial court, furthermore, failed to advise Cameron that the parole board may impose a prison term of up to one-half of the prison term originally imposed, if he violates supervision or a condition of his post-

---

[4] See *State v. Williams*, 1st Dist. No. C-081148, 2010-Ohio-1879,¶20.
[5] See *State v. Brown*, 1st Dist. Nos. C-100390 and C-100310, 2011-Ohio-1029, ¶8 and ¶9, quoting *State v. Fischer*, 128 Ohio St.3d 92, 2010-Ohio-6238, 942 N.E.2d 332, ¶26.
[6] See *Brown*, supra, at ¶8.
[7] See R.C. 2911.01(A)(1); R.C. 2967.28(B)(1).
[8] See R.C. 2923.13(A)(2); R.C. 2967.28(B)(2).

release control.[9]   As a result, we sustain his second assignment of error and remand this case to the trial court for it to correct its judgment "by employing the sentencing correction mechanism of R.C. 2929.191."[10]   We affirm the trial court's judgment and sentences in all other respects.

Judgment accordingly.

**HENDON** and **CUNNINGHAM, JJ.,** concur.

Please Note:

The court has recorded its own entry this date.

---

[9] See R.C. 2929.19(B)(3)(c).
[10] See *Williams*, supra, at ¶23-24.