[Cite as *State v. Chapman*, 2017-Ohio-8181.]

# IN THE COURT OF APPEALS
# FIRST APPELLATE DISTRICT OF OHIO
# HAMILTON COUNTY, OHIO

| | | |
|---|---|---|
| STATE OF OHIO, | : | APPEAL NOS. C-160397 |
| | | C-160398 |
| Plaintiff-Appellee, | : | C-160399 |
| | | TRIAL NOS. C-14TRC-23620A,B,C |
| vs. | : | |
| | | *O P I N I O N.* |
| ERIC CHAPMAN, | : | |
| | | |
| Defendant-Appellant. | : | |

Criminal Appeals From:  Hamilton County Municipal Court

Judgments Appealed From Are:   Affirmed in C-160397 and C-160399; Appeal Dismissed in C-160398

Date of Judgment Entry on Appeal:  October 13, 2017

*Joseph T. Deters*, Hamilton County Prosecuting Attorney, and *Sean M. Donovan*, Assistant Prosecuting Attorney, for Plaintiff-Appellee,

*The Law Office of John D. Hill, LLC, John D. Hill, Jr.*, and *Rubenstein & Thurman, LPA.,* and *Scott A. Rubenstein*, for Defendant-Appellant.

**DETERS, Judge.**

{¶1} Following a jury trial, defendant-appellant Eric Chapman was convicted of one count of driving under the influence of alcohol under former R.C. 4511.19(A)(1)(A), one count of refusing to take a chemical test under former R.C. 4511.19(A)(2), and one count of making an improper turn under R.C. 4511.36. As a preliminary matter, we note that Chapman does not raise any argument related to the conviction for making an improper turn, so we dismiss the appeal numbered C-160398. As to the other appeals, we find no merit in Chapman's two assignments of error, and we affirm his convictions.

### I.    Facts and Procedure

{¶2} The record shows that in the early morning hours of May 24, 2014, Trooper Jacob Salamon of the Ohio State Highway Patrol observed a car approaching him from behind at a high rate of speed. As the car approached, the driver abruptly slammed on his brakes, causing the front of the car to drastically dip. It then pulled in behind Trooper Salamon's cruiser. Trooper Salamon testified that in his experience, the abruptness of the move was very unusual.

{¶3} Trooper Salamon moved over to get behind the car and followed it off an exit. When the trooper observed the driver make an improper turn, he stopped the vehicle. Chapman was the driver and the sole occupant of the car. Upon approaching the car, Trooper Salamon detected a strong odor of alcohol coming from Chapman. He also noticed that Chapman appeared nervous and that his eyes were bloodshot, watery, and glassy. As the trooper spoke to Chapman, he noticed that

Chapman's speech was slightly slurred and that the odor of alcohol was coming from Chapman's breath.

{¶4} Chapman told Trooper Salamon that he worked as a bartender and that he was headed home after working a private party. He denied having consumed any alcohol that night. Trooper Salamon asked Chapman to step out of the car so that he could conduct field-sobriety tests to determine if Chapman was impaired. Despite handing the trooper a lawyer's business card, Chapman agreed to perform the tests.

{¶5} Trooper Salamon conducted a horizontal-gaze-nystagmus test. He observed six out of a possible six clues that indicated impairment. He also observed that Chapman swayed during the test. He conducted the test outside of the range of his cruiser's dashboard camera, for safety reasons.

{¶6} Before having Chapman perform the other tests, Trooper Salamon asked Chapman if he had any physical problems that would have prevented Chapman from performing the tests. Chapman stated that he had some hip problems, but nothing that would impair him.

{¶7} On the "walk-and-turn" test, Trooper Salomon indicated that he observed six of eight clues indicative of impairment. Chapman was unable to hold his position while the trooper instructed him on how to do the test. Chapman was also unable to touch his heels to his toes, walk a straight line or maintain his balance. He intermittently raised his arms more than six inches to steady himself.

{¶8} During the "one-leg-stand" test, Chapman swayed, raised his arms for balance, and put his feet down twice. Trooper Salamon observed three out of four

clues of possible impairment. Both the walk-and-turn test and the one-leg-stand test were recorded by Trooper Salamon's dashboard camera and played for the jury.

{¶9}   Based on his training and experience, Trooper Salamon determined that Chapman's ability to operate a motor vehicle was impaired. He placed Chapman under arrest and transported him to the Norwood Police Department, where Chapman refused to take a breath test.

{¶10}  The parties stipulated that Chapman had previously been convicted of an OVI offense. Chapman testified that he had been working as a bartender at a small private party that evening. The party ended at around 11:30, and he had stayed and chatted with the hosts for about 30 minutes. On the way home, he was driving 65 to 70 m.p.h., following another car, when he saw Trooper Salamon's cruiser on the side of the road. The other car sped past the cruiser, and Chapman moved over because it looked like the trooper was going to pull out onto the highway,  He continued to go about his business, and he had no idea that Trooper Salamon was following him until he was pulled over.

{¶11}  Chapman further testified that he suffered from chronic back, neck, shoulder and hip pain, for which he had been seeing various chiropractors. Because he did not have insurance, he had been paying the chiropractors out-of-pocket. His employment, which required him to remain on his feet for long periods of time, greatly exacerbated the pain. He had worked all day prior to his arrest. As a result, he was exhausted and in pain from having been on his feet all day.

{¶12}  Chapman denied consuming any alcohol. He stated that he had declined to take a breath test based on his distrust of the Norwood Police Department, which would have conducted the test, and based on past advice from his

4

clients who had told him that the tests were inherently unreliable. The state impeached his testimony with pictures showing that he had been skydiving a month prior to his arrest.

## II. Expert Testimony

{¶13} In his first assignment of error, Chapman contends that the trial court erred in excluding the testimony of Dr. Thomas Eliopulos, a chiropractor who had treated him for back, neck and other issues. He argues that the expert testimony was proper under Evid.R. 702 and that its exclusion resulted in material prejudice. This assignment of error is not well taken.

{¶14} Trial courts have broad discretion in determining the admissibility of expert testimony. *Valentine v. Conrad*, 110 Ohio St.3d 42, 2006-Ohio-3561, 850 N.E.2d 683, ¶ 9; *State v. Edwards*, 1st Dist. Hamilton No. C-100200, 2011-Ohio-1752, ¶ 15. In general, courts should admit expert testimony when it is material and relevant, pursuant to Evid.R. 702. *Edwards* at ¶ 15.

{¶15} Evid.R. 702 permits a witness to testify as an expert when (1) the witness's testimony relates to matters beyond the knowledge or experience of a lay person, (2) the witness has specialized knowledge, skill, experience, training, or education regarding the subject matter of his or her testimony, and (3) the witness's testimony is based on reliable, scientific, technical or specialized information. *State v. Carr*, 1st Dist. Hamilton No. C-090109, 2010-Ohio-2764, ¶ 23. Under *Daubert v. Merrell Dow Pharmaceuticals, Inc.*, 509 U.S. 579, 113 S.Ct. 2786, 125 L.Ed.2d 469 (1993), the trial court assumes a gatekeeper function and determines whether to permit the expert to testify by assessing the reliability of the expert's principles and

methodology and the relevance of the testimony. *Miller v. Bike Athletic Co.*, 80 Ohio St.3d 607, 611-612, 687 N.E.2d 735 (1998); *Edwards* at ¶ 15.

{¶16} The trial court excluded the testimony because it was not relevant. Relevance is a threshold question when determining the admissibility of expert testimony. *State v. Waldock*, 2015-Ohio-1079, 33 N.E.3d 505, ¶ 63 (3d Dist.). Relevant evidence is "evidence having any tendency to make the existence of any fact that is of consequence to the determination of an action more probable or less probable than it would be without the evidence." Evid.R. 401. "[T]he trial court's gatekeeping function also requires it to judge whether an expert's testimony is 'relevant to the task at hand' in that it logically advances a material aspect of the proposing party's case." *Terry v. Caputo*, 115 Ohio St.3d 351, 2007-Ohio-5023, 875 N.E.2d 72, ¶ 26, quoting *Valentine v. PPG Industries, Inc.*, 158 Ohio App.3d 615, 2004-Ohio-4521, 821 N.E.2d 580, ¶ 30 (4th Dist.).

{¶17} Courts have referred to this aspect of relevancy as "fit." *Daubert*, 509 U.S. at 591, 113 S.Ct. 2786, 125 L.Ed.2d 469; *Terry* at ¶ 26. An expert's testimony must "fit" under the facts of the case so that "it will aid the jury in resolving a factual dispute." *Waldock* at ¶ 65, quoting *Meadows v. Anchor Longwall & Rebuild, Inc.*, 306 Fed.Appx. 781, 790 (3d Cir.2009). The "fit" element encompasses "the proffered connection between the scientific research or test result to be presented and the particular disputed factual issues in the case." *Waldock* at ¶ 65, quoting *Allstate Ins. Co. v. Hamilton Beach/Proctor Silex, Inc.*, W.D.Pa. No. 2:06CV1186, 2008 WL 3891259, *5 (Aug. 19, 2008). When an expert's testimony is logically connected to the questions at issue and assists the trier of fact to understand the evidence, the testimony is relevant. *Waldock* at ¶ 65.

{¶18} Chapman sought to have Dr. Eliopulos testify about his treatment of Chapman and how his medical condition would have affected his performance on the field-sobriety tests. But the record shows that Dr. Eliopulos had only seen Chapman about three times and that he had not seen him for almost a year before the date of the offenses. Therefore, the trial court concluded that he had no knowledge of Chapman's condition at the time of the offenses and his testimony was not relevant.

{¶19} Thus, the expert testimony did not "fit" the facts of the case. It was not logically connected to the questions at issue, and it would not have aided the jury in resolving a factual dispute or in understanding the evidence.

{¶20} The proponent of the expert testimony bears the burden to demonstrate that the testimony satisfies the *Daubert* requirements by a preponderance of the evidence. *Watkins v. Affinia Group*, 2016-Ohio-2830, 54 N.E.3d 174, ¶ 25 (8th Dist.); *Marcus v. Rusk Heating & Cooling, Inc.*, 12th Dist. Clermont No. CA2012-03-026, 2013-Ohio-528, ¶ 27; *State v. Hatcher*, 11th Dist. Portage Nos. 2012-P-0077 and 2012-P-0078, 2013-Ohio-445, ¶ 24. We cannot say that trial court's decision that Chapman failed to meet that burden was so arbitrary, unreasonable or unconscionable as to connote an abuse of discretion. As a reviewing court, we cannot substitute our judgment for that of the trial court. *See Valentine*, 110 Ohio St.3d 42, 2006-Ohio-3561, 850 N.E.2d 683, at ¶ 9. Consequently, we overrule Chapman's first assignment of error.

### III.  Manifest Weight

{¶21} In his second assignment of error, Chapman contends that his convictions were against the manifest weight of the evidence. After reviewing the

record, we cannot say that the trier of fact lost its way and created such a manifest miscarriage of justice that we must reverse Chapman's convictions and order a new trial. Therefore, the convictions were not against the manifest weight of the evidence. *See State v. Thompkins*, 78 Ohio St.3d 380, 387, 678 N.E.2d 541 (1997); *State v. Cameron*, 1st Dist. Hamilton No. C-100708, 2011-Ohio-4484, ¶ 8.

{¶22} Chapman is simply arguing that his testimony was more credible than that of the arresting officer, but matters as to the credibility of evidence were for the trier of fact to decide*. State v. Bryan*, 101 Ohio St.3d 272, 2004-Ohio-971, 804 N.E.2d 433, ¶ 116; *State v. Bell*, 2015-Ohio-1711, 34 N.E.3d 405, ¶ 59 (1st Dist.). Therefore, we overrule Chapman's second assignment of error.

### IV. Summary

{¶23} In sum, we overrule both of Chapman's assignments of error. We affirm the trial court's judgments in the appeals numbered C-160397 and C-160399, and we dismiss the appeal numbered C-160398.

Judgment accordingly.

**MILLER, J.,** concurs separately.
**MYERS, P.J.,** concurs in part and dissents in part.

**MILLER, J.**, concurring separately.

{¶24} The dissent makes a compelling argument for why Dr. Eliopulos should have been permitted to testify. Had I been the trial judge, I would have allowed the testimony. However, our review is limited to whether the trial court abused its "broad discretion" when it determined that the testimony was not relevant. I must conclude that it did not.

{¶25}  The office records indicated that Dr. Eliopulos treated Chapman once a year in 2011, 2012 and 2013. The last treatment was nearly a year prior to the arrest and two and a half years prior to the trial. The proffered expert opinion was that the injury "could very well have impacted [Chapman's] ability to successfully perform standardized field sobriety tests." Saying something "could very well have impacted" an event is different than opining that it did impact it. I cannot say that excluding opinion testimony from a former treating chiropractor was an abuse of discretion where the trial court concluded that chiropractor was unaware of Chapman's condition on the night in question and the proffered opinion was wishy-washy to begin with.

**MYERS, P.J.,** concurring in part and dissenting in part.

{¶26}  I respectfully dissent.  Dr. Eliopulos was one of Chapman's treating chiropractors.  He personally examined and treated Chapman.  After he left the practice, Chapman's care was transferred to another chiropractor.  While Dr. Eliopulos had not seen Chapman for nearly a year before Chapman's arrest, his testimony was nonetheless relevant. As with any expert, Dr. Eliopolus could base his opinion on facts perceived by him or admitted into evidence.  Evid. R. 703. Moveover, there is no question that he was qualified to testify as an expert through specialized knowledge and training, and that his testimony related to matters beyond the knowledge of a lay person. Evid. R. 702.  The only remaining question is whether his testimony was based on reliable information.  I would find that it was.  Even though Dr. Eliopulos had not seen Chapman for nearly a year, I would find that the trial court erred in not permitting him to testify about Chapman's medical condition

9

and the effect that condition would have on his performance of the field-sobriety tests. Any questions about how often Dr. Eliopulos saw Chapman, how long ago, and the basis for his opinion, go to the weight and sufficiency of the evidence, not its admissibility.

{¶27} I would hold that the trial court erred in excluding the testimony of Dr. Eliopulos and that its exclusion materially prejudiced Chapman. I would reverse the trial court's judgment on the OVI charge and remand the cause for a new trial on that charge. I concur with the majority's disposition of the other two charges.

Please note:

The court has recorded its own entry this date.