[Cite as *State v. Johnson*, 2021-Ohio-1321.]

# IN THE COURT OF APPEALS
# FIRST APPELLATE DISTRICT OF OHIO
# HAMILTON COUNTY, OHIO


| | | |
|---|---|---|
| STATE OF OHIO, | : | APPEAL NOS. C-190658 |
| | | C-190659 |
| Plaintiff-Appellee, | : | TRIAL NOS. C-19CRB-24444 |
| | | C-19CRB-25540 |
| | : | |
| vs. | | |
| | : | *O P I N I O N.* |
| SHAQUAN JOHNSON, | : | |
| Defendant-Appellant. | : | |


Criminal Appeals From:  Hamilton County Municipal Court

Judgment Appealed From Is:  Affirmed

Date of Judgment Entry on Appeal:  April 16, 2021


*Joseph T. Deters*, Hamilton County Prosecuting Attorney, and *Adam Tieger*, Assistant Prosecuting Attorney, for Plaintiff-Appellee,

*Raymond T. Faller,* Hamilton County Public Defender, and *David Hoffman*, Assistant Public Defender, for Defendant-Appellant.

**BERGERON, Presiding Judge.**

{¶1} Following a bench trial, the court found defendant-appellant Shaquan Johnson guilty of assault and domestic violence for attacking his girlfriend, and it sentenced him to 180 days in jail after merging the domestic violence charge with the assault. Mr. Johnson now challenges the weight and sufficiency of the evidence for the assault conviction, attacking the evidence underlying his conviction. But we see nothing amiss in the sufficiency of the evidence or the court's evaluation of it, and we accordingly affirm Mr. Johnson's assault conviction. We decline, however, to review the trial court's domestic violence finding because that charge merged with the assault charge. We therefore overrule both assignments of error and affirm the trial court's judgment.

I.

{¶2} Mr. Johnson's assault conviction arises from a series of physical altercations occurring over the course of a week. At the time of these events, Mr. Johnson had been in a relationship with Lutriece Lewis for nearly a year, with the couple living together for about a month. Ms. Lewis testified that the violence sparked on a Sunday, after Mr. Johnson grew angry about her late arrival home the night before. As the episode escalated, Mr. Johnson allegedly punched her in the face and kicked her in the ribs; inflicting a black eye and a bruise on her side. After things simmered down, he apparently apologized, and the two "went back to [their] normal routine." Ms. Lewis then returned to work on Monday and Tuesday, fabricating a story to explain her black eye.

{¶3} But matters took another violent turn Tuesday evening after Ms. Lewis refused to let Mr. Johnson use her vehicle. She testified that this precipitated

another beating that exacerbated her black eye, causing it to turn deeper hues of "purple and black." And as a result, Mr. Johnson refused to let her leave the house for fear that someone would notice her injuries. She also testified that he began controlling her phone, ostensibly to prevent her from calling for help. The following day, Ms. Lewis ventured outside without concealing the bruising on her face, prompting Mr. Johnson to fly into a rage and punch her repeatedly. Finally, a couple of days later, Ms. Lewis messaged an SOS to a friend, requesting a rescue. However, because she did not believe that Mr. Johnson would simply permit her to walk out, she and her friend left under the auspices of a shopping excursion. Her friend then took her to the police, where Ms. Lewis relayed this whole affair.

{¶4} Mr. Johnson testified in his own defense and, unsurprisingly, offered a different version of these events. Although he doesn't dispute that he caused Ms. Lewis's black eye or the bruise on her ribs, he characterizes the injuries as accidental. According to his version, as he sought to leave the house to confront another man who Ms. Lewis had been seeing, she came up from behind and grabbed him to prevent the altercation. Attempting to extricate himself, Mr. Johnson jerked his elbow around, accidentally hitting her in the eye. This impact allegedly caused Ms. Lewis to stumble and fall onto the corner of a coffee table, thus explaining the bruised ribs.

{¶5} The case proceeded to a bench trial with the court ultimately deeming Ms. Lewis's story more credible and finding Mr. Johnson guilty of assault and domestic violence. At sentencing, the court merged the domestic violence charge into the assault charge, sentencing him to 180 days in jail. Mr. Johnson brought two appeals, challenging the assault conviction as well as the guilty finding for the

domestic violence charge. We consolidated the two appeals, and Mr. Johnson now presents two assignments of error. We address each in turn.

II.

{¶6} In his first assignment of error, Mr. Johnson argues that his assault conviction was against the weight and sufficiency of the evidence. A person is guilty of assault when they "knowingly cause or attempt to cause physical harm to another." R.C. 2903.13(A). "A person acts knowingly, regardless of purpose, when the person is aware that the person's conduct will probably cause a certain result or will probably be of a certain nature." R.C. 2901.22(B).

{¶7} In reviewing whether the conviction runs counter to the manifest weight of the evidence, we sit as a "thirteenth juror." *State v. Thompkins*, 78 Ohio St.3d 380, 387, 678 N.E.2d 541 (1997). In other words, we review the evidence, the credibility of witnesses, and the entire record. *Id.* But we will only reverse if the trial court "clearly lost its way and created such a manifest miscarriage of justice that the conviction must be reversed and a new trial ordered." *Id.*, quoting *State v. Martin*, 20 Ohio App.3d 172, 175, 485 N.E.2d 717 (1st Dist.1983). By contrast, with respect to sufficiency, " 'the relevant inquiry is whether, after viewing the evidence in a light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime proven beyond a reasonable doubt.' " *State v. Walker*, 150 Ohio St.3d 409, 2016-Ohio-8295, 82 N.E.3d 1124, ¶ 12, quoting *State v. Jenks*, 61 Ohio St.3d 259, 574 N.E.2d 492 (1991), paragraph two of the syllabus. And "where reasonable minds can reach different conclusions upon conflicting evidence, determination as to what occurred is a question for the trier of fact. It is not the function of an appellate court to substitute its judgment for that of the factfinder."

4

*State v. Shabazz*, 146 Ohio St.3d 404, 2016-Ohio-1055, 57 N.E.3d 1119, ¶ 20, quoting *Jenks* at 279. Whether the evidence sufficed to support Mr. Johnson's assault conviction presents a legal question that we review de novo. *State v. Ellison*, 178 Ohio App.3d 734, 2008-Ohio-5282, 900 N.E.2d 228, ¶ 9 (1st Dist.).

{¶8} Mr. Johnson mainly dwells on inconsistencies in Ms. Lewis's story to argue that the trial court lost its way in believing her version of events. He first maintains that had Ms. Lewis faced as much danger as she pretends, she could have called the police earlier—perhaps while at work on Monday or Tuesday. But Ms. Lewis explained that she believed the threat had passed during that time because he had apologized for Sunday's tirade. Additionally, once the violence resumed, she testified that she was afraid to seek help for fear of provoking him further.

{¶9} Mr. Johnson next highlights perceived inconsistencies in Ms. Lewis's statement to police. In that initial statement, Ms. Lewis failed to mention that he had kicked her in the ribs. She also relayed that Mr. Johnson would not allow her to leave the house and that he confiscated her phone. But Ms. Lewis explained that she did not convey everything when she first met with police because she "was an emotional wreck." She also clarified that she did not intend to imply that Mr. Johnson never let her leave, but that he made her stay in the house after the beating on Tuesday evening.

{¶10} Additionally, Mr. Johnson reasons that, had he punched Ms. Lewis as much as she claims, more bruising would have been apparent. He also notes that she initially testified that she went to the police immediately after her friend picked her up, but later admitted that she did not go until later that evening. Thus, Mr. Johnson insists that this extra time allowed Ms. Lewis and her friend to concoct a story before

meeting with the police. These assertions, of course, are simply speculation that the trial court need not accept.

{¶11} In short, the efforts to poke holes in Ms. Lewis' testimony do not come close to showing that the trial court clearly lost its way in believing her. As the finder of fact, it was the trial court's responsibility to make credibility determinations, and nothing here suggests the court went astray. And having believed Ms. Lewis's version of events, more than sufficient evidence exists in the record to conclude that Mr. Johnson knowingly caused physical harm to Ms. Lewis. The court's judgment was therefore supported by the weight and sufficiency of the evidence, and we overrule Mr. Johnson's first assignment of error.

III.

{¶12} In his second assignment of error, Mr. Johnson takes aim at the guilty finding for his domestic violence charge, but this assignment fails on a threshold obstacle—the court did not actually convict him of domestic violence based on the merger. "A conviction does not exist where there has been a guilty verdict * * * but no sentence." *State v. Croom*, 7th Dist. Mahoning No. 12 MA 54, 2013-Ohio-5682, ¶ 59, citing *State v. Whitfield*, 124 Ohio St.3d 319, 2010-Ohio-2, 922 N.E.2d 182, ¶ 12; *State v. Obsaint*, 1st Dist. Hamilton No. C-060629, 2007-Ohio-2661, ¶ 24 (same). Thus, "even assuming arguendo his contention here has merit, there exists no conviction for this court to vacate." *Croom* at ¶ 61. As a result, we need not address Mr. Johnson's argument regarding the merged offense. *Id.*; *see State v. Turner*, 2d Dist. Clark No. 2017-CA-78, 2019-Ohio-144, ¶ 22 ("Because the felony murder and felonious assault offenses were merged with [the defendant's] purposeful murder conviction for purposes of sentencing, we need not address [the

defendant's] arguments regarding those merged offenses."); *State v. Ramos*, 8th Dist. Cuyahoga No. 103596, 2016-Ohio-7685, ¶ 14 ("When counts in an indictment are allied offenses, and there is sufficient evidence to support the offense on which the state elects to have the defendant sentenced, the appellate court need not consider the sufficiency of the evidence on the count that is subject to merger because any error would be harmless."), citing *State v. Powell*, 49 Ohio St.3d 255, 263, 552 N.E.2d 191 (1990). We therefore dismiss Mr. Johnson's second assignment of error.

*       *       *

{¶13} In light of the foregoing analysis, we overrule Mr. Johnson's first assignment of error, dismiss his second, and affirm the judgment of the trial court.

Judgment affirmed.

**WINKLER** and **BOCK, JJ.,** concur.

Please note:

The court has recorded its entry on the date of the release of this opinion