[Cite as *State v. Wright*, 2024-Ohio-851.]

# IN THE COURT OF APPEALS
# FIRST APPELLATE DISTRICT OF OHIO
# HAMILTON COUNTY, OHIO


|                          |   |                                          |
|--------------------------|---|------------------------------------------|
| STATE OF OHIO,           | : | APPEAL NO. C-220578                      |
|                          |   | TRIAL NO. B-1802063                      |
|    Plaintiff-Appellee, | : |                              |
|                          |   |                                          |
|   vs.          |   |                                          |
|                          | : |                                          |
| ANTHONY WRIGHT,          |   | *O P I N I O N.*                         |
|                          | : |                                          |
|    Defendant-Appellant. | : |                              |


Criminal Appeal From: Hamilton County Court of Common Pleas

Judgment Appealed From Is: Affirmed

Date of Judgment Entry on Appeal: March 8, 2024


*Melissa A. Powers*, Hamilton County Prosecuting Attorney, and *Alex Scott Havlin*, Assistant Prosecuting Attorney, for Plaintiff-Appellee,

*Bryan R. Perkins,* for Defendant-Appellant.

**BOCK, Presiding Judge.**

{¶1}   In five assignments of error, defendant-appellant Anthony Wright challenges his convictions for rape and attempted rape. Wright claims that his convictions are not supported by sufficient evidence and are against the manifest weight of the evidence. We hold that the child-victim's testimony establishing the elements of rape and attempted rape was sufficient to sustain a rape conviction. And Wright's convictions are not against the manifest weight of the evidence.

{¶2}   Next, Wright argues that the trial court abused its discretion when it denied his motion for a new trial based on newly discovered evidence. But we hold that the trial court reasonably found that Wright's sexually-transmitted-infection diagnosis was discoverable through the exercise of reasonable diligence because he had experienced symptoms of the infection years before the offenses occurred.

{¶3}   Wright also claims that the trial court erroneously admitted witness testimony that impermissibly vouched for the credibility of the victim. While a physician's conclusion that there is a "high likelihood that abuse has occurred" constitutes impermissible vouching for the credibility of a witness, the error is harmless because the trial court did not rely on that statement. And a social worker's determination that a child's behaviors during an interview are consistent with a child that was abused does not rise to impermissible vouching. Finally, the child victim's statements during a forensic interview were admissible as statements made for the purposes of medical diagnosis or treatment under Evid.R. 803(4).

{¶4}   We overrule Wright's assignments of error and affirm his convictions.

## I. Facts and Procedure

{¶5}  The state charged Wright with four counts of rape in violation of R.C. 2907.02(A)(1)(b), which prohibits sexual conduct with a person "less than thirteen years of age." According to the complaint, Wright sexually abused then six-year-old N.K. on multiple occasions over a three-month period, from November 1, 2016, to February 1, 2017. The counts relate to four separate acts of sexual abuse: vaginal intercourse, cunnilingus, anal intercourse, and digital penetration.

{¶6}  At the bench trial, testimony established that N.K. lived in a second-floor, two-bedroom apartment with her mother and three older siblings. The ground floor was occupied by Wright's sister, her boyfriend Duke, Wright's niece and nephew, and Wright's mother. N.K. and her siblings spent time in the downstairs apartment with Wright's niece, and neighborhood children frequently visited the apartments.

{¶7}  According to N.K.'s mother, she dated Wright, though her timeline of the relationship is unclear. N.K.'s mother worked evenings, from 3:00 p.m. to 11:00 p.m., and often a second shift until 7:00 a.m. N.K.'s mother testified that Wright started "stepping into being a little more of a father to my children." Wright and his sister started watching N.K. and her siblings after school.

### N.K. testified about sexual abuse

{¶8}  At trial, 11-year-old N.K. described four instances of sexual abuse commited by Wright. She was scared to disclose the abuse because Wright "used to hurt my mom," and threatened to harm her mother if she reported him.

{¶9}  The first instance occurred in the room N.K. shared with her siblings while her siblings were asleep in their beds. N.K. "was asleep and felt [Wright touching her], but I didn't wake up, but then I woke up." Wright removed her pants and was on top of her, bottomless. Wright touched her "down below." Using a diagram, N.K.

3

clarified that he touched her vagina with his "down below," or penis. She could not recall if there was penetration or how long it lasted. Later, she offered conflicting testimony regarding penetration.

{¶10}  Second, Wright pulled N.K. from an interior stairwell into a first-floor room, locked the door, and told her "he wouldn't do it to the other siblings because they would tell." It was daytime, though N.K. testified that everyone was asleep. She was clothed, and he touched her buttocks through her clothing. Later, she testified that Wright touched her vagina with his penis. On cross-examination, she answered yes when asked if he touched her buttocks through her clothing and "nothing else." On redirect, she testified that there was penetration, but no ejaculation.

{¶11}  Third, Wright was "going to sleep" in his niece's room in the downstairs apartment. N.K. was in the room with other children. The children starting leaving the room when Wright "grabbed [N.K.'s] arm," removed her clothes, and performed cunnilingus. On redirect, she testified that it was just her and her brother in the downstairs apartment. There was conflicting testimony about whether there was penetration. After the incident, she left the room and played a game with her brother.

{¶12}  Fourth, Wright touched N.K. in her mother's room while her siblings were in a nearby room in the upstairs apartment. Wright sat on N.K.'s mother's bed, called N.K. over for a hug, and asked to touch her. He touched her vagina and "butt" with his penis, which N.K. demonstrated in court with a diagram. N.K. testified that it hurt. Later, she testified that he inserted his penis into her vagina and "butt." She testified that afterwards, she went back into her room.

*Witness testimony described N.K.'s and Wright's interactions*

{¶13}  N.K.'s brother described "this one time where I was downstairs [in the living room] * * * playing a game, and [Wright] was in a room with my sister." He tried

4

to enter the room, but N.K. blocked the door. He recalled that Wright was lying on his stomach with his arms crossed. When N.K. left the room, she was quiet.

{¶14} N.K.'s mother became alarmed by N.K.'s behavioral issues, so she took N.K. to a behavior specialist in November 2017 and eventually learned that N.K. had reported the sexual abuse to a counselor. Her mother told N.K.'s siblings about the abuse, took N.K. to the Mayerson Center, and called the police. That same month, N.K. was expelled from her elementary school.

{¶15} Cincinnati Police Detective Tiffany Green described her investigation and explained that she had referred the case to the grand jury because N.K. "had a good disclosure."

{¶16} Cecilia Freihofer, a social worker employed by the Mayerson Center for Safe & Healthy Children, interviewed N.K. in December 2017. The state presented the substance of Freihofer's interview of N.K. through Freihofer's testimony, a recording of the interview, a "Report of Suspected Child Abuse," and a delayed-disclosure analysis prepared by Freihofer.

{¶17} Over Wright's objection, the trial court designated Freihofer as an expert on the subjects of forensic interviews and delayed disclosure. Freihofer described the general characteristics and dynamics of child sexual abuse disclosures. She estimated that roughly 92 percent of child sexual-abuse victims that she has interviewed delayed reporting abuse. These delays occur for a variety of reasons, including a fear of disbelief, "getting in trouble," familial consequences, and an internalized normalization of the abuse.

{¶18} Freihofer testified that N.K. reported, "he raped me." Freihofer learned through follow-up questions that the sexual abuse involved Wright's penis and N.K.'s vagina and anus. N.K. became increasingly anxious during the interview and,

according to Freihofer, N.K.'s behavior was consistent with a person who had experienced a traumatic event. Due to the nature of the disclosure, Freihofer referred N.K. for medical and mental-health treatment.

**{¶19}** In his defense, Wright's sister and niece testified that Wright and N.K. were never alone, as another person was always in the apartment. A family friend also testified that the downstairs apartment bustled with foot traffic from frequent visitors.

### *Wright was found guilty of rape and attempted rape*

**{¶20}** The trial court found Wright guilty of attempted rape for counts one and three because the evidence failed to establish penetration beyond a reasonable doubt. And due to the lack of evidence of penetration, Wright was found not guilty of the fourth count of rape. But the trial court found Wright guilty of rape in count two, explaining that it did "believe the testimony of the witness and her statements" that Wright performed cunnilingus on N.K. The trial court imposed a 15-years-to-life sentence for rape in count two, merged the first attempted rape count into the third count, and imposed a concurrent ten-years-to-life sentence for count three.

**{¶21}** Following his sentencing, Wright moved for a new trial under Crim.R. 33(A)(6), arguing that a posttrial herpes "flare up" and diagnosis constituted newly discovered material evidence unavailable to him at the time of the trial. The trial court denied his motion.

**{¶22}** Wright appeals and raises five assignments of error.

## II. Law and Analysis

**{¶23}** As an initial matter, the trial court merged count one into count three. As such, Wright was not sentenced for the first count of attempted rape, and without a sentence, there is no conviction. *State v. Johnson*, 1st Dist. Hamilton Nos. C-190658

6

and C-190659, 2021-Ohio-1321, ¶ 12. Therefore, we do not address the merits of his arguments regarding the merged count. *Id.*

{¶24} In his first two assignments of error, Wright contends that his convictions are not supported by sufficient evidence and are against the manifest weight of the evidence. Wright recognizes that these arguments raise "separate and legally distinct determinations" for an appellate court. *See State v. Vicente-Colon*, 9th Dist. Lorain No. 09CA009705, 2010-Ohio-6242, ¶ 18; *see also State v. Thompkins,* 78 Ohio St.3d 380, 386, 678 N.E.2d 541 (1997) ("The legal concepts of sufficiency of the evidence and weight of the evidence are both quantitatively and qualitatively different."). For ease of analysis, we address his sufficiency challenge raised in his second assignment of error first.

*The state presented sufficient evidence of rape and attempted rape*

{¶25} Wright challenges the sufficiency of the evidence, which tests "the adequacy of the evidence on each element of the offense." *State v. Staley*, 1st Dist. Hamilton Nos. C-200270, C-200271 and C-200272, 2021-Ohio-3086, ¶ 9. When reviewing the sufficiency of the evidence, we must determine " 'whether[,] "after viewing the probative evidence and inferences reasonably drawn therefrom in the light most favorable to the prosecution, any rational trier of fact could have found all the essential elements of the offense beyond a reasonable doubt." ' " *State v. Svoboda*, 2021-Ohio-4197, 180 N.E.3d 1277, ¶ 26 (1st Dist.), quoting *State v. Scott*, 1st Dist. Hamilton Nos. C-200385 and C-200403, 2021-Ohio-3427, ¶ 23, quoting *State v. Martin*, 20 Ohio App.3d 172, 175, 485 N.E.2d 717 (1st Dist. 1983). The sufficiency of the evidence is a question of law that we review de novo. *Id.* We do not weigh the evidence and if the evidence " 'is susceptible to more than one construction, [we] must

7

give it the interpretation that is consistent with the judgment.' " *Scott* at ¶ 23, quoting *In re J.C.,* 1st Dist. Hamilton No. C-180493, 2019-Ohio-4027, ¶ 20.

{¶26} The trial court convicted Wright of rape in violation of R.C. 2907.02(A)(1)(b), which makes it a crime to "engage in sexual conduct with another who is not the spouse of the offender or who is the spouse of the offender but is living separate and apart from the offender, when * * * [t]he other person is less than thirteen years of age, whether or not the offender knows the age of the other person." Relevant here, sexual conduct includes "vaginal intercourse between a male and female; anal intercourse, fellatio, and cunnilingus." R.C. 2907.01(A).

{¶27} Here, N.K. testified that the incidents occurred when she was six years old and, with the help of anatomical diagrams, that Wright touched her vagina with his mouth in a downstairs apartment bedroom. A rational fact finder could have found that her testimony established that Wright engaged in cunnilingus-based sexual conduct with N.K., thus establishing the elements of rape.

{¶28} Turning to his conviction for attempted rape in count three, the record must contain evidence that Wright attempted anal intercourse with N.K. Under R.C. 2923.02, attempt is "engag[ing] in conduct that, if successful, would constitute or result in the offense." The Supreme Court of Ohio has explained that " ' "criminal attempt" is when one purposely does or omits to do anything which is an act or omission constituting a substantial step in a course of conduct planned to culminate in his commission of the crime.' " *State v. Group*, 98 Ohio St.3d 248, 2002-Ohio-7247, 781 N.E.2d 980, ¶ 95, quoting *State v. Woods*, 48 Ohio St.2d 127, 357 N.E.2d 1059 (1976), paragraph one of the syllabus. A "substantial step" is an act " 'strongly corroborative of the actor's criminal purpose,' " which shows " 'a firm purpose to commit a crime.' " *Id.,* quoting *Woods* at 132 and paragraph one of the syllabus.

8

**{¶29}** Here, N.K. testified that Wright was on her mother's bed in the upstairs apartment and called N.K. into the room, asking for a hug. He asked to touch her, touched his penis to her vagina before he touched his penis to the "inside of" her "butt." At another point in her testimony, she testified that his penis touched the outside of her "butt." The Supreme Court of Ohio has explained that "where the evidence shows that the defendant attempts to penetrate the victim's anus, and, for whatever reason, fails to do so and makes contact only with the buttocks, there is sufficient evidence to prove the defendant guilty of the crime of attempted anal rape." *State v. Wells*, 91 Ohio St.3d 32, 34, 740 N.E.2d 1097 (2001). Considering the sequence of events, a rational trier of fact viewing the evidence in a light most favorable to the state could have found that Wright's placing his penis on N.K.'s buttocks constituted a substantial step towards committing anal rape.

**{¶30}** We overrule Wright's second assignment of error.

*Wright's convictions are not against the manifest weight of the evidence*

**{¶31}** In his first assignment of error, Wright maintains that his convictions are contrary to the manifest weight of the evidence. To reverse his convictions as against the manifest weight of the evidence, we act as the 13th juror and review " ' "the entire record, weigh the evidence and all reasonable inferences, consider the credibility of the witnesses and determine whether, in resolving conflicts in the evidence, the [trier of fact] clearly lost its way and created such a manifest miscarriage of justice that the conviction must be reversed and a new trial ordered." ' " *State v. Gasper*, 1st Dist. Hamilton No. C-220218, 2023-Ohio-1500, ¶ 72, quoting *State v. Bailey*, 1st Dist. Hamilton No. C-140129, 2015-Ohio-2997, ¶ 59, quoting *State v. Thompkins*, 78 Ohio St.3d 380, 678 N.E.2d 541 (1997).

**{¶32}** Wright maintains that the evidence was not suggestive of sexual conduct between Wright and N.K., emphasizing the lack of physical evidence presented at trial. As a general rule, "a lack of physical evidence, standing alone, does not render a defendant's conviction against the manifest weight of the evidence." *State v. Robertson*, 8th Dist. Cuyahoga No. 106279, 2018-Ohio-2934, ¶ 32. Moreover, " '[a] conviction may rest solely on the testimony of a single witness, including the victim, if believed, and there is no requirement that a victim's testimony be corroborated to be believed.' " *State v. Mitchell*, 1st Dist. Hamilton No. C-210675, 2022-Ohio-3713, ¶ 17, quoting *id.* at ¶ 38. More specifically, there is "no requirement, statutory or otherwise, that a rape victim's testimony be corroborated" by physical evidence. *State v. Love*, 49 Ohio App.3d 88, 91, 550 N.E.2d 951 (1st Dist.1988); *see State v. Hall,* 12th Dist. Butler Nos. CA2005-08-217 and CA2005-08-358, 2006-Ohio-4206, ¶ 82; *see also State v. Stuart,* 11th Dist. Lake No. 2018-L-145, 2020-Ohio-3239, ¶ 93; *State v. Taylor*, 8th Dist. Cuyahoga No. 100315, 2014-Ohio-3134, ¶ 39.

**{¶33}** Wright argues that N.K.'s testimony was internally inconsistent, implausible, and contradictory to her statements to Freihofer during her interview. In short, Wright argues that N.K.'s narrative lacked coherence. Wright is correct that N.K.'s testimony initially described cunnilingus in Wright's niece's bedroom but later included vaginal intercourse, and during her interview she reported that both cunnilingus and anal intercourse occurred in that room. Wright is also correct that N.K.'s testimony describing vaginal and anal intercourse in her mother's room differs from what she reported to Freihofer.

**{¶34}** Despite discrepancies in N.K.'s testimony and statements, she consistently explained that cunnilingus was performed in Wright's niece's room and there was contact between Wright's penis and her "butt" in her mother's room. And

10

significantly, Freihofer testified that children often confuse details when discussing a repeated experience: "when something happens often enough, you're going to get confused on what happened where, because at the time when a child is being traumatized, they may not be focusing on what room they're in, they're likely just focusing on what is happening."

**{¶35}** While there were inconsistencies, "[c]redibility determinations on conflicting testimony, however, are issues primarily reserved for the trier of fact and will be second-guessed only in the most exceptional case." *State v. Malone*, 10th Dist. Franklin No. 98AP-278, 1998 Ohio App. LEXIS 5647, 9 (Dec. 1, 1998). The trial court found N.K.'s testimony credible, and we defer to the trial court's credibility determinations because it "had the opportunity to observe the witness' demeanor, gestures, and voice inflections that cannot be conveyed to us through the written record." *State v. Whitfield*, 1st Dist. Hamilton No. C-190591, 2020-Ohio-2929, ¶ 12.

**{¶36}** Moreover, N.K. was six years old during the incidents and 11 years old when she testified, and inconsistencies in a "child victim's statements regarding the sexual conduct does not render the judgment against the manifest weight or sufficiency of the evidence." *State v. Wolters*, 2022-Ohio-538, 185 N.E.3d 601, ¶ 20 (5th Dist.). The trier of fact was "free to use [its] life experiences in assessing the testimony of a child verses an adult and draw its conclusion." *State v. Allen*, 5th Dist. Stark No. 2021CA00051, 2022-Ohio-268, ¶ 31.

**{¶37}** Wright argues the rapes could not have occurred as they were described, due to the presence of others in the apartment, and in the case of the rape that occurred in N.K.'s room, others in the room. To be sure, Wright's sister, niece, and a family friend described a consistent flow of visitors to the apartments. And there were numerous individuals living in both apartments, which Wright maintains shows that

he lacked the opportunity to commit the offenses. But there was testimony that Wright lived upstairs during his relationship with N.K.'s mother, who worked nights. N.K. arrived home from school earlier than her siblings. And N.K.'s brother's testimony corroborated N.K.'s account of the rape in Wright's niece's room.

{¶38} Finally, Wright contends that in N.K.'s version of events, he "had ample means and opportunity to actually penetrate her and yet he did not," as found by the trial court, and therefore his conviction for attempted rape should be reversed. In his view, the lack of penetration requires a finding that he never attempted penetration. For numerous reasons, penetration may not occur. *See State v. Kirkland*, 140 Ohio St.3d 73, 2014-Ohio-1966, 15 N.E.3d 818, ¶ 48 ("unable to penetrate her completely"); *see State v. Riddle*, 7th Dist. Mahoning No. 78 CA 131, 1979 Ohio App. LEXIS 11919, 11 (Aug. 1, 1979) (ten-year-old "victim had testified that the appellant was unable to gain penetration"); *Wise v. State*, 635 N.E.2d 221, 222 (Ind.App.1994) ("Wise touched her vagina with his penis, but was unable to penetrate.").

{¶39} All told, the trial court found N.K. credible, and the trial court " 'is in the best position to judge the credibility of the witnesses and the weight to be given to the evidence presented.' " *Svoboda*, 2021-Ohio-4197, 180 N.E.3d 1277, at ¶ 41, quoting *State v. Carson*, 1st Dist. Hamilton No. C-180336, 2019-Ohio-4550, ¶ 16. We find no reason to disturb that credibility finding. Following our review of the entire record we conclude that the trial court did not clearly lose its way and create a manifest miscarriage of justice. We overrule Wright's first assignment of error.

*The trial court reasonably denied Wright's motion for a new trial*

{¶40} In his third assignment of error, Wright argues that the trial court abused its discretion when it denied his Crim.R. 33 motion for a new trial premised on newly discovered evidence in the form of a herpes outbreak in prison and diagnosis.

Specifically, he moved for a new trial citing an "unexpected herpes outbreak after his trial and prior to sentencing and was only then made aware of the fact that he in fact had herpes by subsequent testing."

**{¶41}** The decision to grant or deny a new trial is an exercise of the trial court's "sound discretion," and we will not reverse that decision "in an absence of an abuse of that discretion." *State v. Cannon*, 1st Dist. Hamilton No. C-210131, 2021-Ohio-4198, ¶ 20. To find that the trial court abused that discretion, its decision must be unreasonable, arbitrary, or unconscionable. *Id., citing State v. Adams*, 62 Ohio St.2d 151, 157, 404 N.E.2d 144 (1980).

**{¶42}** Under Crim.R. 33(A)(6), a new trial may be granted if "new evidence material to the defense is discovered which the defendant could not with reasonable diligence have discovered and produced at the trial," and that new evidence materially affects a defendant's substantial rights. Newly discovered evidence warrants a new trial if the defendant establishes:

> [T]hat the evidence "(1) discloses a strong probability that it will change the result if a new trial is granted, (2) has been discovered since the trial, (3) is such as could not in the exercise of due diligence have been discovered before the trial, (4) is material to the issues, (5) is not merely cumulative to former evidence, and (6) does not merely impeach or contradict the former evidence."

*Cannon* at ¶ 19, quoting *State v. Petro*, 148 Ohio St. 505, 76 N.E.2d 370 (1947), syllabus.

**{¶43}** The trial court denied Wright's motion, explaining that Wright "has not shown that the newly discovered evidence that Defendant has herpes would change

13

the result if a new trial is granted, that it could not have been discovered before trial even with the exercise of due diligence, or that it was material to the issues."

{¶44}  We note that Wright was only required to show *a strong probability*, not certainty, that the new evidence would have changed the outcome following a new trial. But the trial court reasonably concluded that Wright failed to demonstrate that he could not, after exercising due diligence, have discovered his herpes diagnosis before trial. Wright's motion makes clear that he experienced a "Herpes outbreak/flare up" before 2016, but that he "did not know what it was at the time" and never sought a diagnosis or treatment. The trial court reasonably concluded that Wright "had ample time to use due diligence to get diagnosed and investigate what affect his diagnosis would have had on his defense long before trial." Indeed, Wright's counsel questioned several state witnesses about the absence of a positive STI test result following N.K.'s physical examination. At all times during the trial, Wright was aware that he had experienced a herpes outbreak before 2016.

{¶45}  Therefore, the trial court did not abuse its discretion when it denied Wright's motion. We overrule his third assignment of error.

### *Witnesses may not vouch for the credibility or veracity of other witnesses*

{¶46}  In his fourth assignment of error, Wright argues that the trial court erred when it admitted testimony and documentary evidence that he claims vouched for N.K.'s credibility as a witness. First, Wright challenges the admission of the Mayerson Center Report under Evid.R. 702, which contains Dr. Kathi Makoroff's opinion that N.K. experienced abuse. Wright also maintains that the trial court erred when it permitted Freihofer and Detective Green to improperly vouch for N.K.'s credibility.

{¶47} " 'In our system of justice it is the fact finder, not the so-called expert or lay witnesses, who bears the burden of assessing the credibility and veracity of witnesses.' " *State v. Boston*, 46 Ohio St.3d 108, 129, 545 N.E.2d 1220 (1989), quoting *State v. Eastham*, 39 Ohio St.3d 307, 312, 530 N.E.2d 409 (1988) (Brown, J., concurring separately). So "neither lay nor expert witnesses are permitted to testify about the veracity of another witness." *State v. Lawson*, 4th Dist. Highland No. 14CA5, 2015-Ohio-189, ¶ 17.

{¶48} In *Svoboda*, we explained that "[b]olstering is permitted, vouching is not." *Svoboda*, 2021-Ohio-4197, 180 N.E.3d 1277, at ¶ 93. Impermissible vouching consists of " 'expert testimony that a child witness is telling the truth,' " and "opinion[s] as to the truth of the child's statements." *Id.*, quoting *State v. Stowers*, 81 Ohio St.3d 260, 261-262, 690 N.E.2d 881 (1998). In contrast, an expert "may testify that the behavior of an alleged child victim is consistent with behavior observed in other sexually-abused children." *Id.* Further, experts may provide testimony that "provides 'additional support for the truth of the *facts testified to* by the child, or which assists the fact finder in assessing the child's veracity.' " (Emphasis in *Stowers*.) *Id.*, quoting *Stowers* at 263. In other words, a witness's testimony must not usurp the trier of fact's province at trial.

A. Dr. Makoroff's improper vouching did not affect the outcome of the trial

{¶49} We begin with Makoroff's physician's note in the Mayerson Center Report of Suspected Child Abuse, where Makoroff concluded, based on Freihofer's report and the normal results of N.K.'s physical examination, "I believe that there is a high likelihood that abuse has occurred. This diagnosis is made because of the history that [N.K.] provided."

**{¶50}** Typically, this court reviews the admission of expert testimony for an abuse of discretion. *State v. Mincey*, 2023-Ohio-472, 208 N.E.3d 1043, ¶ 45 (1st Dist.). But Wright did not object to the admission of the Mayerson Center Report and waived all but plain error. To establish plain error, Wright " 'must establish that an error occurred, that the error was obvious, and that there is a reasonable probability that the error resulted in prejudice, meaning that the error affected the outcome of the trial.' " *State v. Mounts*, 1st Dist. Hamilton No. C-210608, 2023-Ohio-3861, ¶ 49, quoting *State v. Bailey*, 171 Ohio St.3d 486, 2022-Ohio-4407, 218 N.E.3d 858. Plain error is reserved for " 'exceptional circumstances to prevent injustice.' " *Id.*, quoting *Bailey* at ¶ 8.

**{¶51}** The state appears to agree that admitting the unredacted report was an error. In *Mincey*, this court considered Makoroff's testimony that there was "a high likelihood that abuse has occurred" in that case. *Mincey* at ¶ 49. Similar to this case, Makoroff's "opinion was based on H.S.'s normal physical exam and H.S.'s Mayerson interview." *Id.* at ¶ 52. We explained that under these circumstances,

> [I]t is difficult to interpret Makoroff's testimony as anything other than a statement of Makoroff's personal belief in the veracity of H.S.'s statement. This goes beyond merely contextualizing why an abuse victim might have a normal physical exam or why she might be reluctant to report the abuse and constitutes improper vouching for H.S.'s credibility.

*Id.* Makoroff's opinion in this case is more troubling as Wright had no opportunity to cross-examine Makoroff about her conclusion. So Makoroff's conclusion that "there is a high likelihood that abuse has occurred" in this case constitutes improper vouching, and therefore the admission of the unredacted report was an error.

16

**{¶52}** For prejudice, Wright must demonstrate a reasonable probability that Makoroff's conclusion affected the outcome of the trial. *Mounts* at ¶ 49. In *Mincey*, this court held the admission of Makoroff's expert opinion was ultimately harmless, as "[t]he state did not mention Makoroff's testimony at all in closing. In light of the other evidence against Mincey and the lack of emphasis the state placed on this testimony, the effect of Makoroff's impermissible vouching for H.S.'s credibility is minimal. Therefore, the error was harmless." *Mincey* at ¶ 53, citing *State v. Lukacs*, 188 Ohio App.3d 597, 2010-Ohio-2364, 936 N.E.2d 506, ¶ 33 (1st Dist.).

**{¶53}** So too here. Wright was the first to raise Makoroff's conclusion during his cross-examination of Freihofer, and the state's case ignored her determination. And this was a bench trial, so "we presume that the trial court did not consider improper evidence in reaching its verdict." *State v. Neal*, 1st Dist. Hamilton No. C-210166, 2022-Ohio-1290, ¶ 31. To overcome that presumption, the record must affirmatively show otherwise. *See State v. Morris,* 1st Dist. Hamilton Nos. C-220651 and C-220652, 2023-Ohio-4622, ¶ 20. There is no indication that the trial court relied on Makoroff's vouching when it assessed N.K.'s credibility. Wright has failed to show plain error.

B. <u>Court did not abuse its discretion by admitting Freihofer's expert testimony</u>

**{¶54}** Next, Wright raises three challenges to Freihofer's expert testimony. First, he claims that Freihofer was unqualified to testify as an expert on the topic of delayed disclosure. Second, he argues that Freihofer's opinion that delayed disclosure was consistent with abuse lacked a foundation. Third, he contends that Freihofer's ultimate opinion constitutes improper vouching.

1. *The trial court properly qualified Freifhofer as an expert*

**{¶55}** "Trial courts have broad discretion in determining the admissibility of expert testimony." *State v. Chapman*, 1st Dist. Hamilton Nos. C-160397, C-160398 and C-160399, 2017-Ohio-8181, ¶ 14. We review the admission of expert testimony for an abuse of discretion. *Svoboda*, 2021-Ohio-4197, 180 N.E.3d 1277, at ¶ 89.

**{¶56}** Individuals may testify as experts if their testimony concerns "matters beyond the knowledge or experience possessed by lay persons or dispels a misconception among laypersons." Evid.R. 702(A). But the trial court must assess their qualifications as experts, based on their "specialized knowledge, skill, experience, training, or education regarding the subject matter of the testimony." Evid.R. 702(B). The Ohio Supreme Court has explained, "[n]either special education nor certification is necessary to confer expert status upon a witness." S*tate v. Foust*, 105 Ohio St.3d 137, 2004-Ohio-7006, 823 N.E.2d 836, ¶ 77. Moreover, Evid.R. 702 does not require "complete knowledge of the field in question, as long as the knowledge he or she possesses will aid the trier of fact in performing its fact-finding function." *Id.,* quoting *State v. Hartman*, 93 Ohio St.3d 274, 285, 754 N.E.2d 1150 (2001).

**{¶57}** Wright emphasizes Freihofer's statement that she had "probably at a minimum maybe 13 hours probably" of delayed-disclosure training and her inability to recall a single study related to delayed disclosure to argue that qualifying her as an expert was an abuse of discretion. We disagree.

**{¶58}** Freihofer has a master's degree in social work and significant forensic-interview training. She explained that "[i]n most forensic interview trainings that we go to there is a portion where we learn about delayed disclosure and discuss ways to help kids' reluctance and hesitancy to talk about things." While she could not name a study, she identified several traumatic experiences associated with delayed disclosure,

including "sexual abuse, severe physical abuse, witness to murder, human trafficking, [and] child pornography," and discussed the dynamics of these traumatic events and the victim's ultimate disclosure. Plus, she has conducted more than 4,000 forensic interviews during her 15-year career at the Mayerson Center and explained that "delayed disclosure" is a "big part" of forensic interviews. Through her training and experience, Freihofer acquired specialized knowledge about delayed disclosure and the trial court's qualifying her as an expert was not an abuse of discretion.

2. *The state established a foundation for Freihofer's testimony*

{¶59} Expert testimony must be "based on reliable, scientific, technical or specialized information." Evid.R. 702(C). Put differently, the trial court acts "as a 'gatekeeper' to ensure that the proffered scientific, technical, or other specialized information is sufficiently reliable." *Knowlton v. Schultz*, 179 Ohio App.3d 497, 2008-Ohio-5984, 902 N.E.2d 548, ¶ 54 (1st Dist.).

{¶60} In her testimony, Freihofer concluded that N.K.'s disclosure was consistent with a child who had experienced a traumatic event. She cited the fact that N.K. walked around the room during the interview, "asked if we were done several times," discussed feeling "sad and scared," and used "broad terms" to describe the abuse as behaviors that supported her conclusion.

{¶61} Wright seems to argue that this conclusion was not based on specialized knowledge because these behaviors are common in all children. But when discussing delayed disclosure, Freihofer explained the interplay between trauma and disclosures and identified lay people's misconceptions regarding the behaviors of trauma victims. She reached her conclusion based on her training and experience. And the admissibility of an expert's opinion "depends on whether the principles and methods employed by the expert to reach that opinion are reliable, and not 'whether [her]

19

conclusions are correct.' " *State v. Carr*, 1st Dist. Hamilton No. C-090109, 2010-Ohio-2764, ¶ 23, quoting *State v. Finley*, 1st Dist. Hamilton No. C-061052, 2008-Ohio-4904, ¶ 32, quoting *Terry v. Caputo*, 115 Ohio St.3d 351, 2007-Ohio-5023, 875 N.E.2d 72, ¶ 16-22. We hold that her testimony satisfied the requirements of Evid.R. 702(C).

3. *Freihofer did not vouch for N.K.'s credibility*

**{¶62}** Wright insists that Freihofer improperly vouched for N.K.'s credibility when she explained that N.K.'s behavior during the interview was consistent with children who have experienced abuse. But "an expert witness may testify that the behavior of an alleged child victim is consistent with behavior observed in other sexually-abused children." *Svoboda*, 2021-Ohio-4197, 180 N.E.3d 1277, at ¶ 93, citing *Stowers*, 81 Ohio St.3d at 261, 690 N.E.2d 881.

**{¶63}** This testimony assisted the trial court's understanding of the nature of N.K.'s disclosure. As Freihofer explained, "lay people assume kids are gonna [sic] sit there and cry and tell us about this stuff, but the fact is that the majority of kids that we talk to don't cry, even though they are talking about something difficult." Plus, Freihofer declined to state whether N.K. was sexually abused. She explained, "I would not be saying if it occurred or not because that is not my job," and she was not there to "determine whether the allegations are true or not."

**{¶64}** In *Mincey,* we held that the trial court does not abuse its discretion when it admits a social worker's testimony that a child's behavior "*is consistent with* inappropriate sexual contact and concerning for abuse" where the social worker did not testify that the abuse occurred or that the child was being truthful when she disclosed sexual abuse. (Emphasis in original.) *Mincey,* 2023-Ohio-472, 208 N.E.3d 1043, at ¶ 47. We see no reason to depart from our recent opinions in *Svoboda* and *Mincey*. The trial court did not abuse its discretion when it allowed Freihofer to testify

that N.K.'s behavior during the forensic interview was consistent with children who have experienced abuse.

C. Wright failed to show plain error

{¶65} Wright argues that the trial court abused its discretion when it allowed Detective Green to impermissibly vouch for N.K.'s credibility. Detective Green testified that she believed N.K. "had a good disclosure and I felt like it should be presented [to the grand jury]." But Wright failed to object to this testimony and has forfeited all but plain error. On appeal, Wright does not explain why the admission of this testimony constitutes plain error. "When an appellant fails to develop a plain-error analysis, the appellate court need not create one on the appellant's behalf and may decline to reach the merits of the claim." *State v. Warth*, 1st Dist. Hamilton No. C-220477, 2023-Ohio-3641, ¶ 52, citing *State v. Chapman*, 9th Dist. Summit No. 28626, 2018-Ohio-1142, ¶ 23. We overrule Wright's fourth assignment of error.

*N.K.'s interview statements were made for medical diagnosis and treatment*

{¶66} In his fifth assignment of error, Wright maintains that N.K.'s statements to Freihofer during their interview constitute inadmissible hearsay. He argues that these statements do not fall under the hearsay exception for statements made for a medical diagnosis under Evid.R. 803(4).

{¶67} Hearsay is an out-of-court statement "offered in evidence to prove the truth of the matter asserted in the statement." Evid.R. 801(C). Hearsay is inadmissible unless the statements in question fall under a hearsay exception. *See* Evid.R. 803.[1]

---

[1] While not argued, N.K.'s statements during the interview are an issue of double hearsay because the recording itself is hearsay. *See State v. Reynolds,* 6th Dist. Lucas No. L-16-1080, 2018-Ohio-40, ¶ 49 ("[T]he medical records and victim 1's statement in the medical records are both hearsay."); *see also Ohio v. Scott,* 1st Dist. Hamilton Nos. C-200385 and C-200403, 2021-Ohio-3427, ¶ 18, fn. 1. But the recordings appear admissible under Evid.R. 803(6) as a business record.

**{¶68}** Relevant here, a statement is not hearsay if it was "made for purposes of medical diagnosis or treatment and describing medical history, or past or present symptoms, pain, or sensations, or the inception or general character of the cause or external source thereof insofar as reasonably pertinent to diagnosis or treatment." Evid.R. 803(4). The Supreme Court of Ohio has explained that "information regarding the identity of the perpetrator, the age of the perpetrator, the type of abuse alleged, and the time frame of the abuse allows the doctor or nurse to determine whether to test the child for sexually transmitted infections." *State v. Arnold,* 126 Ohio St.3d 290, 2010-Ohio-2742, 933 N.E.2d 775, ¶ 32.

**{¶69}** This court recently considered whether a child's statements to a social worker were made for the purposes of a medical diagnosis or treatment and explained that relevant factors include " '(1) the nature of the questioning—whether the interviewer asked leading or suggestive questions; (2) whether the child had a reason to lie; (3) whether the child understood the need to tell the truth; (4) the age of the child at the time the statements were made; and (5) whether the child's statements were consistent.' " *State v. Jackson*, 1st Dist. Hamilton No. C-210466, 2022-Ohio-2562, ¶ 62, quoting *State v. Muttart*, 116 Ohio St.3d 5, 2007-Ohio-5267, 875 N.E.2d 944, ¶ 11. Considering those factors, we held that the child's statements in *Jackson* were admissible under Evid.R. 803(4) because:

> K.B. was in the sixth grade at the time of her interview with Colliers. She was not questioned in an overly leading or suggestive manner, she had no motive to lie, she seemed to understand the need to be truthful, and she was consistent in her allegations that Jackson engaged in sexual acts with her.

*Id.* at ¶ 63.

{¶70} These same factors weigh in favor of finding that N.K.'s Mayerson Center interview was conducted for medical diagnosis and treatment. N.K. was seven years old at the time of the interview. During the interview, Freihofer instructed N.K. that "it's important to me that when we talk today, we talk about things that are real, things that are true, things that really happened." N.K. responded that this made sense. The questions were not excessively leading and were appropriate in an interview of a seven-year-old child. There was no evidence of coaching. And N.K.'s statements were consistent at the time of the interview and mostly consistent with her testimony.

{¶71} Moreover, Freihofer explained that she recommended continuing mental-health treatment for N.K. based on the interview. She testified that she conducts the interview to ensure that the child is healthy and to determine the need for treatment. She further explained that the interview serves to "get a better idea of what it is that they're reporting has happened so that we can determine, one, if they're experiencing any emotional distress and if therapy should be recommended. And, then also, two, to be able to provide the information to our physicians and determine what medical care is indicated."

{¶72} Wright argues that the interview occurred one year after the abuse and therefore there was no indication that N.K. was injured or required medical treatment. But this fails to account for the possibility of transmission of diseases or infections from sexual contact and the necessity of diagnosing and treating the mental health of sexual-assault victims. While we recognize that the report was sent to the police, Freihofer is a mandatory reporter.

{¶73} We hold that N.K.'s statements were admissible under Evid.R. 803(4) and overrule Wright's fifth assignment of error.

23

### III. <u>Conclusion</u>

**{¶74}** We overrule Wright's five assignments of error and affirm his convictions.

Judgment affirmed.

**CROUSE** and **KINSLEY, JJ.,** concur.

Please note:

The court has recorded its entry on the date of the release of this opinion.